UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROLLAND ALLOTEY,

      Petitioner,

vs.                                                                    Case No. 3:17-cv-1161-J-20JRK

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

      Respondents.

---

## **ORDER**

## I.  **INTRODUCTION**

Through a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody (Petition) (Doc. 1), Petitioner Rolland Allotey challenges his state court (Duval County) conviction for scheme to defraud a financial institution by means of false or fraudulent pretense, representations, or promises (case no. 2011-CF-12315, counts one, two, three, four, five, eight, and nine); fraudulent use of a credit card (case no. 2011-CF-12315, counts seven, eleven, and twelve); criminal use of personal identification (case no. 2011-CF-12315, count ten); and criminal use of personal identification information (case no. 2011-CF-12315, count six); criminal use of personal identification (case no. 2012-CF-00597, counts one, three, eleven, twelve, fifteen, sixteen, and seventeen); scheme to defraud a financial institution by means of false or fraudulent pretense, representation, or promises (case no. 2012-CF-00597, counts two, four, six, seven, nine, ten, thirteen, fourteen, and eighteen); and criminal

use of personal identification information (case no. 2012-CF-00597, counts five and eight). (Doc. 1-1 at 1). He filed a Memorandum of Law in Support of Petition for Habeas Corpus (Doc. 2).[1]

Respondents filed an Answer to Petition for Writ of Habeas Corpus (Response) (Doc. 17) addressing two of the three grounds raised in the Petition. Petitioner filed a Reply to Respondents' Answer (Reply) (Doc. 19). The Court directed Respondents to file a supplemental response addressing ground three of the Petition. Order (Doc. 23). Respondents filed a Supplemental Answer/Response to Habeas Petition Ground 3 (Supplemental Response) (Doc. 24) and a Supplemental Appendix (Doc. 24).[2] Petitioner filed a Supplemental Reply to Respondents' Answer to Habeas Corpus Petition Ground Three (Supplemental Reply) (Doc. 25).

Respondents concede the Petition is timely. Response at 20-21. As far as exhaustion, Respondents state Petitioner exhausted grounds one and two by raising the issues on direct appeal. Id. at 22. Respondents submit that Petitioner exhausted his state remedies as to ground three "by presenting at least a version of that ground in his IAAC petition, in his 1st 3.850 motion and in his 2nd 3.850 motion." Supplemental Response at 23.

---

[1] The Court advised Petitioner and gave him an opportunity to file a reply. See Order (Doc. 5).

[2] Respondents filed Appendices (Docs. 17 & 24). The Court will refer to the Exhibits in the Appendices as "Ex." Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the exhibit. Otherwise, the page number on the document will be referenced. For the Petition, Response, Reply, Supplemental Response, and Supplemental Reply, the Court references the page numbers assigned by the electronic filing system.

## II. EVIDENTIARY HEARING

"In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citations omitted), cert. denied, 137 S. Ct. 2245 (2017). To be entitled to an evidentiary hearing, the petitioner must allege "facts that, if true, would entitle him to relief." Martin v. United States, 949 F.3d 662, 670 (11th Cir. 2020) (quoting Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)) (citation omitted), cert. denied, No. 20-30, 2020 WL 5883300 (U.S. Oct. 5. 2020). See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011) (opining a petitioner bears the burden of establishing the need for an evidentiary hearing with more than speculative and inconcrete claims of need), cert. denied, 565 U.S. 1120 (2012); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) (same).

If the allegations are contradicted by the record, patently frivolous, or based upon unsupported generalizations, the court is not required to conduct an evidentiary hearing. Martin, 949 F.3d at 670 (quotation and citation omitted). In this case, the pertinent facts are fully developed in this record or the record otherwise precludes habeas relief; therefore, the Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004). Petitioner has not met his burden as the record refutes the asserted factual allegations or otherwise precludes habeas relief. Therefore, the Court finds Petitioner is not entitled to an evidentiary hearing. Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

## III.   HABEAS REVIEW

Petitioner claims he is detained "in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2241(c)(3).   The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus and "restricts the power of federal courts to grant writs of habeas corpus based on claims that were 'adjudicated on the merits' by a state court."   Shinn v. Kayer, No. 19-1302, 2020 WL 7327827, at *1 (U.S. Dec. 14, 2020).   See 28 U.S.C. § 2254; Sealey v. Warden, Ga. Diagnostic Prison, 954 F.3d 1338, 1354 (11th Cir. 2020) (citation omitted) (acknowledging the deferential framework of AEDPA for evaluating issues previously decided in state court), petition for cert. filed, (U.S. Nov. 6, 2020); Shoop v. Hill, 139 S. Ct. 504, 506 (2019) (per curiam) (recognizing AEDPA imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases").

The Eleventh Circuit describes this framework:

> [federal courts] are prohibited from granting a state prisoner's habeas corpus petition unless the relevant state court decision on the merits of the petitioner's claim 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'

James v. Warden, Holman Correctional Facility, 957 F.3d 1184, 1190 (11th Cir. 2020) (quoting 28 U.S.C. § 2254(d)(1)-(2)), petition for cert. filed, (U.S. Nov. 23, 2020).   The high hurdle described above is not easily surmounted:

> A decision is "contrary to" clearly established federal law if the state court applied a rule that contradicts governing Supreme Court precedent, or if it reached a different conclusion than the Supreme Court did in a case involving materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision involves an "unreasonable application" of clearly established federal law if the court identifies the correct legal principle but applies it unreasonably to the facts before it. Id. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable — a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 127 S. Ct. 1933, 167 L.Ed.2d 836 (2007).

James, 957 F.3d at 1190-91.  Indeed, if the state court applied clearly established federal law to reasonably determined facts when determining a claim on its merits, "a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'" Shinn v. Kayer, 2020 WL 7327827, at * 1 (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).

A state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). "The state court's factual determinations are presumed correct, absent clear and convincing evidence to the contrary." Sealey, 954 F.3d at 1354 (quoting 28 U.S.C. § 2254(e)(1)). This presumption of correctness, however, applies only to findings of fact, not mixed determinations of law and fact. Brannan v. GDCP Warden, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (recognizing the distinction between a pure question of fact from a mixed question of law and fact), cert. denied, 573 U.S. 906 (2014).

Furthermore, the second prong of § 2254(d), requires this Court to "accord the state trial court [determination of the facts] substantial deference."   Dallas v. Warden, 964 F.3d 1285, 1302 (11th Cir. 2020) (quoting Brumfield v. Cain, 576 U.S. 305, 314 (2015)).   As such, a federal district court may not supersede a state trial court's determination simply because reasonable minds may disagree about the finding.   Id. (quotation and citation omitted).

Finally, where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgement, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning."   Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (Wilson).

## IV.   GROUND ONE

> GROUND ONE: The trial court['s] denial of Petition[er's] Motion to Suppress Evidence and the Appellate Court's per curiam affirmance on direct appeal resulted in a violation of Petitioner's Fourth Amendment rights of the United States Constitution.   To wit said denial is contrary to, or involved unreasonable application of clearly established federal law and was based on an unreasonable determination of the facts in light of the evidence presented in the state court hearing.

Petition (Doc. 1-1 at 7).

Petitioner asserts Florida law requires the judge to sign and date a search warrant.   Id.   He alleges that the government agent, a United States Postal

Inspector (PI) Adam Schaefer, obtained a search warrant for Petitioner's home; however, PI Schaefer failed to ensure that the search warrant was signed. Id. PI Schaefer attested that he noticed the omission while inside the home, so he called Assistant State Attorney James Boyles. Id. The trial court denied the motion to suppress without announcing factual findings. Id. Petitioner claims a violation of the Fourth Amendment resulted when the state courts refused to suppress the illegally obtained evidence. Id. Petitioner argues, had the evidence been suppressed, the state would have had to dismiss the charges against Petitioner. Id.

Petitioner, through appellate counsel, raised the following ground on direct appeal: "[t]he search warrant was facially invalid because it was not signed by an issuing magistrate before execution and the trial court erred as a matter of law when it denied appellant's motion to suppress evidence seized based upon the good faith exception to the warrant requirement." Ex. M at 2 (capitalization omitted). The First District Court of Appeal (1st DCA) affirmed per curiam and the mandate issued on March 20, 2015. Ex. O.

The 1st DCA's decision affirming the denial of the motion to suppress is entitled to AEDPA deference. The decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts. Therefore, ground one is due to be denied as AEDPA deference is due.

In the alternative, Petitioner is not entitled to habeas relief on this ground as it has no merit. The record demonstrates the following. Petitioner, proceeding pro

se, filed a Motion to Suppress All Evidence in Unlawful Search/Seizure and Illegal Fruits Thereof on March 26, 2012.   Ex. A at 25-27.   On March 26, 2012, the trial court denied the motion without prejudice, noting that Petitioner could make the appropriate objections and the state would have to lay the appropriate predicate before introducing any of the evidence referenced in the warrant.   Ex. H at 111-16. On that same date, Petitioner pled guilty to both cases.   Id. at 119-36.   Prior to sentencing, Petitioner moved to withdraw his plea, Ex. A at 34-37, and eventually, on August 9, 2012, the court granted an amended motion to withdraw plea filed by counsel.   Ex. A at 45-46, 61.

On September 17, 2012, Petitioner filed a pro se Motion to Suppress and Return of All Evidence/Properties in Unlawful Search/Seizure and Illegal Fruits Thereof.   Ex. C at 62-65.   The trial court conducted a hearing on January 3, 2013, Ex. I at 249-52, and counsel adopted the motion.   The suppression hearing took place on January 31, 2013 and on February 5, 2013, and Petitioner was represented by counsel.   Id. at 256-330.   On January 31, 2013, it was stipulated that Petitioner would rely on two issues for that hearing, whether there was valid search warrant as it was not signed by the judge, and whether or not the search warrant was read to Petitioner at the time it was executed.   Id. at 266.

Petitioner presented his claim to the trial court and the trial court denied the motion to suppress on April 4, 2013, after conducting a very thorough evidentiary hearing.   Id. at 335-38; Ex. A at 83.   During the hearing, PI Schaefer testified.   Ex. I at 268-90.   Investigator John Zipperer also testified.   Id. at 292-98.   Finally,

Petitioner testified. Id. at 308-13. The 1st DCA affirmed the decision of the trial court.[3]   Ex. O.

The record shows Petitioner attested no one read him the search warrant. Ex. I at 310. Investigator Zipperer testified that he read the search warrant to Petitioner in the backseat of one of the postal service vehicles. Id. at 294. PI Schaefer testified he prepared State's Exhibit A, one of the original search warrants concerning Petitioner's apartment, and he also prepared the affidavit attached to it. Id. at 269-70. The trial court admitted Exhibit A, consisting of seven pages, without any objection from Petitioner. Id. at 290. PI Schaefer testified that during the execution of the warrant, after entry into Petitioner's apartment, he noticed that "one of the copies" of the search warrant was not signed by the judge on the search warrant. Id. at 276. PI Schaefer explained that two duplicates of the search warrant documents or packages are created and brought to the judge. Id. at 280. PI Schaefer testified he witnessed the judge sign the two search warrant affidavits, both originals. Id. at 283-84. PI Schaefer said he did not notice that the judge did not sign the search warrant itself until he was in the apartment. Id. at 283. From the apartment, PI Schaefer called the state attorney and advised that both affidavits had been signed by the judge and the PI, and to the best of his knowledge and

---

3 Respondents do not assert Petitioner's Fourth Amendment claim is barred from review under Stone v. Powell, 428 U.S. 465 (1976). The record shows the trial court did not make explicit findings of fact when denying the motion to suppress and the 1st DCA summarily affirmed the decision of the trial court. The lack of explicit findings combined with a summary affirmance "precludes a conclusion in this case that the state provided the meaningful appellate review necessary to erect a Stone v. Powell bar" to review. Tukes v. Dugger, 911 F.2d 508, 514 (11th Cir. 1990), cert. denied, 502 U.S. 898 (1991). Consequently, Petitioner's federal habeas claim is not barred from review.

recollection one of the original search warrants had been signed on the search warrant, but there was one unsigned original search warrant. Id. at 288. PI Schaefer did not keep the search warrant that was signed but left that one in the apartment, to the best of his knowledge. Id. Investigator Zipperer testified he did not notice if the search warrant he read to Petitioner was missing the judge's signature. Id. at 295.

Even assuming neither search warrant was signed by the judge, "a defective warrant can be cured by an affidavit which is referenced in the warrant and which is physically attached to the warrant." State v. Gayle, 573 So.2d 968, 970 (Fla. 5th DCA 1991) (citing State v. Carson, 482 Sod.2d 405 (Fla. 2d DCA 1985)). See State v. Kingston, 617 So.2d 414, 415 (Fla. 2nd DCA 1993) (generally, the affidavit will cure a defective search warrant if it is physically connected and the affidavit is incorporated into the warrant); Kelly v. State, 508 So.2d 568, 569 (Fla. 2nd DCA 1987) (noting that if a search warrant is not facially valid, the supporting document may be referenced to "cure the deficiency of the warrant").[4] Cf. Moreno-Gonzalez v. State, 67 So.3d 1020 (Fla. 2011) (failure of the detective to sign the affidavit when the affidavit in support of the search warrant was initialed and sworn to under oath before the judge did not render the search warrant fatally deficient); Cain v. State, 287 So.2d 69, 70 (Fla. 1973) (approving the decision of the 2nd DCA finding the

---

[4] It has even been found acceptable to have an unattached affidavit in a file folder along with a warrant as long as the affidavit is specifically incorporated into the warrant by reference. State v. Kingston, 617 So.2d at 415.

omission of a specific date in a search warrant could be supplied by supporting documents, like the affidavit).

The record demonstrates the search warrant (with affidavit) consists of seven pages, numbered one through seven, and on the first page of the search warrant it states that it is supported by affidavit.   Ex. A at 72-78.   On the second page of the warrant, it states "the facts establishing the grounds for this application are set forth in the affidavit of Postal Inspector A. Schaefer, United States Postal Inspection Service, a copy of which is attached hereto."   Id. at 73.   Although the search warrant is not signed by a judge on page two, the attached Affidavit for Search Warrant, contained on pages numbered three through seven, is signed by PI Schaefer and a judicial officer.   Id. at 74-78.

Petitioner has failed to show the state court's decision was either an unreasonable determination of the facts or in contravention of federal law.   Indeed, he has not shown that the rejection of this claim was either (1) contrary to, or involved an unreasonable determination of, clearly established United States Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.   As such, this ground is due to be denied.

## V.   GROUND TWO

> GROUND TWO:   The lower tribunal erred denying the Petitioner's motion to discharge in violation of the Petitioner's Six[th] Amendment rights.   To wit said denial is contrary to well established federal law and unreasonable applications thereof.

Petition (Doc. 1-1 at 8).

In his supporting facts, Petitioner states he was arrested on November 8, 2011, and his case was not resolved until June 24, 2013, a span of approximately twenty months. Id. Petitioner asserts the delay was both excessive and attributable to the state, thus violating his Sixth Amendment right to a speedy trial. Id. Petitioner claims he diligently pursued his rights by filing a Notice of Expiration of Speedy Trial on May 1, 2012. Id.

The facts pertinent to this claim are evident from the record filed with the Court. The record shows Petitioner's arrest took place on November 8, 2011. Ex. A at 1-4. On December 5, 2011, Petitioner filed a pro se notice of un-waivable speedy trial rights. Id. at 9. On December 8, 2011, the state charged Petitioner by information with six crimes (11CF084185). Id. at 10-11. An amended information, dated January 19, 2012, charged Petitioner with six crimes (11CF084185). Id. at 20-21. Another information, dated January 19, 2012, charged Petitioner with eighteen more financial crimes (12CF001707). Ex. E at 1-4. The state advised the court that, for the 2011 case, 175 days after arrest would be May 1, 2012, and for the 2012 case, the speedy trial period would end on July 12, 2012. Ex. H at 58.

Prior to the expiration of the speedy trial period, Petitioner, represented by counsel, pled guilty in both the 2011 and 2012 cases on March 26, 2012. Ex. H at 118-36. The court scheduled sentencing for May 16, 2012. Id. at 135-36.

On April 6, 2012, pro se, Petitioner moved to withdraw his plea of guilty. Ex. A at 34-37. On May 1, 2012, he filed a Notice of Expiration Pursuant to Fla. R. Crim. P. 3.191(h) that the speedy trial period had expired. Id. at 38. Petitioner, pro se, filed an Amended Motion to Withdraw Plea of Guilty on May 14, 2012. Id. at 41-43. Counsel filed an Amended Motion to Withdraw Plea on May 15, 2012. Id. at 45-46. The trial court granted counsel's amended motion to withdraw plea on August 9, 2012. Id. at 61.

Notably, on September 11, 2012, Petitioner's counsel asked for a continuance. Ex. I at 231. Petitioner was present. Id. The court granted counsel's request and scheduled a pre-trial hearing for October 2, 2012. Id. at 232. On October 2, 2012, Petitioner's counsel waived Petitioner's presence and asked for a continuance. Id. at 236. The court passed the case to October 16, 2012. Id. Petitioner pursued a motion to suppress, hearings followed, and the trial court denied the motion to suppress on April 4, 2013. Id. at 335-38.

Representing himself, Petitioner, pro se, on May 1, 2013, asked to stay his case pending his interlocutory appeal of the denial of the motion to suppress. Ex. J at 382. The court found no reason to stay the proceedings and denied Petitioner's request for a stay. Id. at 384. Another motion to suppress hearing took place on May 1, 2013. Id. at 390-416. The court denied the motion to suppress. Id. at 416.

On May 15, 2013, Petitioner, proceeding pro se, when asked if he were ready for trial, stated he was not ready for trial. Id. at 424. The court asked for clarification if Petitioner were moving for continuances in both cases, and Petitioner

confirmed that he was.  Id. at 424-25.  The court granted continuances in both cases.  Id. at 425-26.

On May 21, 2013, the state filed a second amended information for the 2011 case.  Ex. A at 126-28.  On May 29, 2013, Petitioner filed a pro se Motion for Discharge, again asserting a violation of his right to a speedy trial, and a notice of expiration.  Id. at 134-35.  The state filed a Traverse and Demurrer.  Id at 137-39. The state also filed a Motion to Strike Defendant's Motion for Discharge and Notice of Expiration.  Id. at 141-42.  The state argued:

> 1.    The Defendant has filed a Motion for Discharge on the erroneous grounds that he filed a Notice of Expiration back on May 1, 2012.

> 2.    The Defendant's Notice of Expiration on May 1, 2012, was invalid.  On March 26, 2012, the Defendant plead guilty to all of his charges in both cases at bar.   The Defendant and his counsel then filed a Motion to Withdraw Guilty Plea and Disqualification of Judge on April 25, 2012. The Honorable Court did not rule upon the Defendant's Motion to Withdraw Guilty Plea until August 9, 2012.

> 3.    Moreover, on May 1, 2012, the Defendant was represented by counsel.   The Defendant's attorney never adopted the May 1, 2012, Notice of Expiration. Accordingly, the Defendant's Motion is null and void[.] This Court later found the Defendant competent to represent himself on April 11, 2013.

> 4.    On May 31, 2013, the Defendant refiled [sic] his May 1, 2012 Notice of Expiration.   This Notice of Expiration is null and void.  **The Defendant previously asked for and was granted a continuance on May 15, 2013 to both cases.   The Defendant's continuance acts as an effective waiver of his speedy trial rights.** Accordingly, the Defendant's Motion to Discharge should be stricken as it rests on legally invalid arguments.

Ex. A at 141 (emphasis added).   On June 4, 2013, the court struck the motion for discharge.   Id. at 140.

On June 12, 2013, Petitioner filed a Motion to Discharge Defendant's [sic] of Count 2, 3, 4, 5, 8, and 9 of the Second Amended Information.   Id. at 147-49.   At a hearing on June 24, 2013, Petitioner asked for dismissal of the 2011 case, and the state responded that Petitioner waived speedy trial when he asked for a continuance. Ex. J at 458-59.   The court denied Petitioner's request for dismissal.   Id. at 459. Petitioner decided to plead no contest in both cases.   Id. at 459-73.   The court entered Judgment and Sentence on August 14, 2013.   Ex. A at 162-70.

On direct appeal, Petitioner raised the following claim:   "[t]he trial court erred in denying Appellant's motion to dismiss based upon a speedy trial violation."   Ex. M at 2 (capitalization omitted).   The 1st DCA affirmed the denial of this ground. Ex. O.

The adjudication of the state court resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court.   Therefore, Petitioner is not entitled to relief on this ground as the state court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Respondents urge this Court to deny Petitioner's Sixth Amendment claim, asserting Petitioner waived his right to speedy trial by first pleading guilty and successfully moving to withdraw his guilty plea, and second, by expressly asking for a continuance at the May 15, 2013 hearing.  Response at 37.  In as much as Petitioner successfully withdrew his guilty plea and then successfully requested a continuance, Respondents contend Petitioner was not entitled to a discharge of either of his state cases.  Id. at 44.

First and foremost, to the extent Petitioner is claiming a violation of state speedy trial law, his claim fails to state a claim of constitutional dimension.  Such a claim is not reviewable in a federal habeas petition.  See Sneed v. Fla. Dep't of Corr., 496 F. App'x 20, 25 (11th Cir. 2012) (per curiam) (finding same as it only involves state procedural rules rather than errors of federal constitutional dimension), cert. denied, 571 U.S. 851 (2013); Davis v. Wainwright, 547 F.2d 261, 264 (5th Cir. 1977) (same).[5]

Under the speedy trial provision of Fla. R. Crim. P. 3.191(a), a defendant charged with a felony in Florida is required to be brought to trial within 175 days of arrest.  But, "[o]nce the motion to withdraw the plea was granted, the case was outside the ambit of rule 3.191[.]"  State v. Rosenfeld, 467 So.2d 731, 732 (Fla. 3rd DCA 1985).  As noted by Respondents, Petitioner cannot now prevail on a speedy

---

[5]  In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

trial claim under the circumstances where he pled guilty and was allowed to withdraw his plea.  Response at 39-40.  See Kehn v. State, 44 So.3d 640 (Fla. 5th DCA 2010) (per curiam) (finding no violation of the speedy trial rule as the petitioner was allowed to withdraw her pleas which caused the case to be outside the ambit of the rule).  Petitioner's Sixth Amendment rights were not violated as once the trial judge permitted Petitioner to withdraw his guilty pleas, it caused the case to be "outside the ambit of the speedy trial rule."  Geiger v. State, 532 So.2d 1298, 1301 (Fla. 2nd DCA 1988).

Additionally, of import, a request for a continuance waives a defendant's right to a speedy trial.  Randall v. State, 938 So.2d 542, 544 (Fla. 1st DCA 2006) (per curiam).  This is the case even if defense counsel requests the continuance without consulting the defendant or counsel's request is made against the defendant's wishes.  Id. (citations omitted).  See Williams v. Sec'y, DOC, No. 3:12-cv-1296-J-39MCR, 2015 WL 4042032, at *16 (M.D. Fla. July 1, 2015) (no violation of a constitutional right where counsel seeks a continuance over client's wishes or objections).  Of course, in the case before the Court, Petitioner, as well as defense counsel, requested continuances.

Finally, and alternatively, Petitioner is not entitled to relief on his speedy trial claim.  The detention period prior to Petitioner pleading guilty was within the 175-day period.  After withdrawal of his plea, both Petitioner and his counsel sought continuances.  As such, the defense delayed the proceedings.  Moreover, Petitioner has not shown prejudice as he has not shown oppressive pretrial incarceration or that

his defense was impaired.   Any delay did not violate Petitioner's Sixth Amendment right to speedy trial.   Petitioner is not entitled to habeas relief on ground two.

## VI.   GROUND THREE

> GROUND THREE:   The lower tribunal erred in denying Petitioner's [claim that his] conditional plea was not knowingly and voluntary[il]y entered.   To wit said denial is a violation of the Petitioner's due process rights and contrary to well established federal law and applications thereof.

Petition (Doc. 1-1 at 9).

In the supporting facts, Petitioner asserts he entered a plea of no contest and reserved his right to appeal all denied motions.   Id.   Petitioner claims he was misled into believing his issues were preserved for appeal.   Id.   "Petitioner contends that he [sic] conditional plea was involuntarily entered and entitled to withdraw his plea and proceed to trial."   Id.

Upon review, Petitioner attempted to exhaust this ground by raising it in his second Rule 3.850 motion.   Ex. V at 7-8.   He claimed in ground three of the motion: "Defendant's plea of nolo-contendere and reserving his right to appeal all denied motions is unlawfully induced and not made knowingly, intelligently, and voluntarily[.]"   Id. at 7 (capitalization omitted).   The trial court, addressing the second Rule 3.850 motion, recognized that Petitioner was raising a claim that he did not enter his pleas knowingly, intelligently, and voluntarily.   Ex. W at 7.   The court noted that Petitioner had previously, in ground three of his initial Rule 3.850 motion, claimed the trial court failed to determine whether the issues were dispositive for

appellate purposes and therefore had misled Petitioner to believe he could seek relief on the contested issues on appeal, and in ground eight of the initial post-conviction motion, claimed counsel was ineffective for failure to properly preserve the denial of the motion to suppress for appeal.  Id.   The court found Petitioner was barred from attempting to reframe his claim to obtain relief.  Id. at 8.   Thus, the court found the second Rule 3.850 motion successive and denied the ground.  Id.

Looking back at the denial of the initial Rule 3.850 motion, the trial court found the issue of trial court error (the court failed to determine whether the issues were dispositive and misled Petitioner to believe he could seek relief on appeal of said issues) was not cognizable in a motion for post-conviction relief, citing Johnson v. State, 985 So.2d 1215 (Fla. 1st DCA 2008) (per curiam) (determining that issues which either were or could have been decided at trial and direct appeal are not cognizable on collateral review).   Ex. W, Order Denying Defendant's Motion to Vacate, Set Aside, or Correct Sentence at 44.   In rejecting Petitioner's claim of ineffective assistance of counsel for failure to properly preserve the denial of his motion to suppress for appeal through counsel's failure to ask the court to make factual findings, the reviewing court found Petitioner failed to satisfy the prejudice prong of Strickland v. Washington, 466 U.S. 668 (1984).  Id. at 48.   The 1st DCA affirmed the decision of the trial court.  Id. at 51.

Respondents submit that Petitioner has exhausted his state court remedies "by presenting at least a version of that ground in his IAAC petition, in his 1st 3.850 motion and in his 2nd 3.850 motion."  Supplemental Response at 23.  "A court has

the discretion to accept or reject a concession from the respondent that administrative remedies have been exhausted." Santiago-Lugo v. Warden, 785 F.3d 467, 475 (11th Cir. 2015). Here, the Court does not accept this concession from the Respondents. Notably, in ground three of the Petition, Petitioner does not raise any claims of ineffective assistance of counsel or ineffective assistance of appellate counsel. Inasmuch as he raises only a claim of trial court error in this Court, it appears that the claim of trial court error is unexhausted and procedurally defaulted. See above.

"[A] state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution claim in state court, **or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default**." Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir.) (citations omitted) (emphasis added), cert. denied, 513 U.S. 1061 (1994). The record demonstrates Petitioner did not properly present ground three to the state courts. Any further attempts to seek post-conviction relief in the state courts on this ground will be unavailing. As such, he has procedurally defaulted the claim.

As Petitioner is procedurally barred from raising ground three in this proceeding, at this stage, he must demonstrate cause and prejudice. Upon review, this Court concludes he has failed to show cause and prejudice. He has also failed to show that failure to address this claim on the merits would result in a fundamental miscarriage of justice. This Court finds this is not an extraordinary case as

Petitioner has not made a showing of actual innocence rather than mere legal innocence.

In conclusion, the Court finds ground three is procedurally defaulted and the fundamental miscarriage of justice exception is inapplicable. Thus, Petitioner is barred from pursuing ground three in federal court.

In the alternative, bypassing the exhaustion issue, the instant claim is due to be denied as it has no merit. On June 24, 2013, Petitioner, who was representing himself, appeared at a status conference to discuss his motion to consolidate and motion to sever counts. Ex. J at 457. When the matter of speedy trial came up, the state said Petitioner had waived speedy trial when he asked for a continuance and there was nothing that would warrant a severance or dismissal of additional charges. Id. at 458-59. The court stated it would not be dismissing any counts and there would be a status conference in two weeks. Id. at 459. At that point, Petitioner told the court he wanted to enter a plea of no contest and reserve the right to appeal all denied motions. Ex. J at 459. The court asked the state if it had any problem with Petitioner pleading no contest straight up to the court, and the prosecutor said, "if he's trying to appeal something[,] I think he has a right. If he's trying to appeal a motion to suppress[,] I think he has a right to pled [sic] no contest." Id. at 461-62. The court took a recess to allow Petitioner to consider the matter of whether he wanted to enter a plea and to review plea forms. Id. at 462.

As noted by Respondents, the trial court had previously granted Petitioner's motion to withdraw a guilty plea. Ex. A at 61. Thereafter, after pre-trial

preparation, continuances, and the denial of motions to suppress and speedy trial matters, Petitioner, proceeding pro se, decided to enter a plea of no contest. Id. at 153-54.   The plea form, which Petitioner signed on June 24, 2013, states the following: "I also understand that by entering this plea I give up the right to appeal all matters relating to the judgment, including the issue of guilt or innocence, unless specifically reserved." Id. at 153.   The form further states that the plea of no contest form is true and correct in all aspects and it represents the sole and complete agreement between Petitioner and the state. Id. at 154.   Finally, it provides, there are no other agreements, representations, or promises that have been made by Petitioner, his attorney, the court, or any representative of the state. Id.   On this form, Petitioner made no mention of reserving the right to appeal any issues going to the judgment.

Stand-by counsel appeared with Petitioner after the recess.   Ex. J at 462.   In the plea colloquy, the court inquired as to whether Petitioner could read and understand the English language.   Id. at 463.   Petitioner assured the court he could. Id.   The court inquired as to whether he had read the form entitled plea of no contest, and Petitioner said he had.   Id.   The court asked Petitioner whether he understood the form and Petitioner responded affirmatively.   Id.   He assured the court it was his signature on the form.   Id. at 464.   He stated the plea was in his best interest. Id.

The court admonished Petitioner that he was giving up important rights, including "the right to appeal all matters relating to the judgment including the issue

of guilt or innocence[.]"  Id. at 465.  Petitioner said yes.  Id.  When the court asked: "is there anything else you would like done in this case before proceeding further[,]" Petitioner said no.  Id. at 468.  Petitioner had no questions for the court.  Id. When the court asked, "[h]as anyone promised you anything in order to get you to enter this plea[,]" Petitioner responded in the negative.  Id. at 469.  The court again asked if Petitioner had any questions, and he responded no.  Id.  Petitioner assured the court he was entering the plea freely, willingly and voluntarily.  Id.  Petitioner stated he was not under the influence of drugs, alcohol or medication.  Id.  During the plea colloquy, there was no mention of Petitioner reserving the right to appeal any issues that related to the judgment.  The court accepted the plea and the state announced the factual basis for the plea.  Id. at 470-73.

Petitioner now claims his plea of nolo contendere was involuntarily entered and he is entitled to withdraw his plea and proceed to trial.  Petition (Doc. 1-1 at 9). Respondents argue that Petitioner failed to specifically reserve his search warrant and speedy trial issues in the plea or during the plea colloquy.  Response at 17.  As such, they contend, those matters are unpreserved.  Id.

Despite Petitioner's statement made during a status conference that he wanted to reserve the right to appeal all denied motions, after a recess was taken for Petitioner to review and decide whether to sign a plea of no contest form, Petitioner decided to sign the form, enter into a plea colloquy with the court, and plead to the court.  In doing so, Petitioner waived his right to appeal all matters relating to the judgment without any reservation.  He assured the court that he was entering his

plea freely and voluntarily.   He confirmed that he had no questions for the court. When asked if any promises had been made, Petitioner said no.   During the entire plea proceeding, Petitioner never mentioned reserving the issue of the denial of any motions.

Petitioner's claim of an involuntary plea is belied by the record.   Petitioner signed the form after Petitioner had time for consideration and reflection.   Petitioner acknowledged by his signature that he entered the plea freely and voluntarily and the form represented the agreement.   Petitioner gave the court every assurance that he was entering his plea freely and voluntarily.   The court sought confirmation that Petitioner could read and write the English language, he understood the form, no promises had been made other than what was contained in the form, and no questions remained for the court.   After providing Petitioner with his rights and seeking confirmation that Petitioner wanted to plead nolo contendere, the trial court accepted the plea and found a factual basis for the plea.

In a post-conviction challenge to a nolo contendere plea, the representations of a petitioner and the prosecutor at the plea hearing as well as the findings made by the court "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).   See Bryant v. McNeil, No. 4:09CV22-SPM/WCS, 2011 WL 2446370, at *2 (N.D. Fla. May 17, 2011) (finding, while not insurmountable, there is a strong presumption), report and recommendation adopted by 2011 WL 2434087 (N.D. Fla. June 16, 2011).   Thus, solemn declarations in open court carry a strong presumption of verity.   During the

plea colloquy, Petitioner assured the court he was entering his plea freely and voluntarily with no promises being made other than what was on the written form, he confirmed he had no questions for the court, and he never requested to reserve particular issues, or any issues, for appeal purposes.

Petitioner's representations during the plea proceeding, the prosecutor's representations at the plea proceeding, and the findings of the trial court accepting the plea present a formidable barrier which Petitioner has not overcome. The Court presumes Petitioner's solemn declarations in open court have strong veracity, and they certainly have not been overcome by his allegation that he was misled by either the trial court or the prosecutor's comments made during a status conference. As such, Petitioner is not entitled to relief on this ground.

Alternatively, to the extent this claim was raised by Petitioner, exhausted in the state courts, and considered by the 1st DCA, the decision to reject this ground is entitled to AEDPA deference. The Court finds the decision is not inconsistent with Supreme Court precedent, and the state court's adjudication of this claim is not contrary to or an unreasonable application of federal law or based on an unreasonable determination of the facts. Thus, Petitioner is not entitled to habeas relief on this ground.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.  The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2.  This action is **DISMISSED WITH PREJUDICE.**

3.    The **Clerk** shall enter judgment accordingly and close this case.

4.    If Petitioner appeals the denial of his Petition for Writ of Habeas Corpus (Doc. 1), **the Court denies a certificate of appealability.**[6]   Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.   Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this _17_ day of December, 2020.

_____
UNITED STATES DISTRICT JUDGE

sa 12/16
c:
Rolland Allotey
Counsel of Record

---

[6] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).   Upon due consideration, this Court will deny a certificate of appealability.

26